UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| LYNNE ANNE ROBERTSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7: 16-235-DCR |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Lynne Anne Robertson and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 10, 12] Robertson contends that the administrative law judge ("ALJ") assigned to her case erred by denying disability income benefits ("DIB") and supplemental security income ("SSI"). She requests that the matter be remanded for further administrative proceedings. [Record No. 10–1, p. 10] Conversely, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by the claimant.

## I.   Procedural History

On October 16, 2013, Robertson filed concurrent applications for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act, alleging that her disability commenced on September 30, 2013. [Administrative

Transcript, "Tr.," 236, 238]  The Social Security Administration ("SSA") denied the applications initially and upon reconsideration. [Tr. 121, 134, 141]  Thereafter, Robertson requested and received an administrative hearing before an ALJ, who denied benefits in a written decision on October 8, 2014. [Tr. 45, 31–40]  Robertson sought review by the Appeals Council.  However, that request was denied on November 7, 2014, and again on October 17, 2016. [Tr. 1, 21].  Accordingly, the claimant has exhausted her administrative remedies and the matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Background

Robertson was forty-five years old at the time of the ALJ's decision. [Tr. 51]  She was divorced and had a fifteen year old daughter living at home. [Tr. 52]  Robertson completed high school and two years of college [Tr. 52, 389] and has worked for a short time as a medical assistant in a podiatry clinic and as a cashier in cosmetics and convenience stores. [Tr. 53–57]

Robertson testified that she began having "nerve" problems about eight or ten years previously, following physical and mental abuse by her ex-husband. [Tr. 58]  The claimant responded when asked about the brief nature of her prior employment that she "just mentally could not do it." [Tr. 59]  She added that she cried at work, got very anxious and that "it was just more than [she] could handle." *Id.*  Robertson testified, however, that the only day she had missed work was the day she "tried to overdose." *Id.*  She left the jobs at the podiatry clinic and convenience store on her own, but was fired from the job at the cosmetics store. [Tr. 61–62]

Robertson advised that she has not attempted suicide again, but that she experiences suicidal thoughts several times per week. [Tr. 60]  She stated that everything was stressful to her, including bathing, because her hair was falling out. *Id.*  As a result, there were some days

that the claimant did not bathe.  [Tr. 61]  Robertson added that she was nervous around too many people and that she mostly stayed in her bedroom.  [Tr. 62]  According to the claimant, these problems prevented her from engaging in social activities with her daughter, although she did take her to school in the mornings.  [Tr. 63, 70]  Robertson testified that she was no longer able to read for pleasure or watch television due to concentration problems.  [Tr. 64]  However, Robertson stated that she had a best friend who visited "a couple of times a week" and communicated with her by text message.  [Tr. 65]

Robertson also testified that she had difficulty sleeping and she had been cutting herself for about five or six years because she "needed to feel something."  [Tr. 66–67]  She believed this was triggered by memories from her childhood and she testified that she was depressed every day.  [Tr. 68]  Robertson also claimed to have been bulimic since the age of 17 and reported throwing up after every meal.  [Tr. 68]  She reported some trouble using her hands due to shakiness, and some stomach pain related to the alleged bulimia.  [Tr. 68–69]  The claimant also reported suffering from asthma and stated that she used an albuterol inhaler daily.  [Tr. 69]

Robertson was admitted to and discharged from Good Samaritan Hospital on August 16, 2013, with diagnoses of alcohol intoxication and acetaminophen overdose.  [Tr. 321]  She reported that she had taken approximately 20 extra-strength Tylenol tablets and had drank three or four beers, but "denied vehemently" that she attempted suicide.  *Id.*  Rather, Robertson reported, she was upset after an argument with her ex-husband.  [Tr. 321, 324]  Hospital staff agreed following a psychiatric evaluation that the incident likely was not a suicide attempt.  [Tr. 321]  Accordingly, Robertson was deemed stable and discharged to home.  [Tr. 315–16]

Wayne Edwards, M.D., performed a consultative examination in December 2013. Robertson told Dr. Edwards that she had "no idea" why she was there. Edwards noted that Robertson gave poor effort periodically throughout the interview. [Tr. 387] Dr. Edwards also observed that Robertson was alone and had driven herself forty miles to attend the examination. [Tr. 389] Her mood was nervous and she had poor eye contact, but her speech was coherent and normal. [Tr. 389] Robertson knew that it was a Saturday in December 2013, but did not know the date. [Tr. 389] She named Kennedy as a recent president but was unable to recall the number of weeks in a year or how an orange and a banana are similar. [Tr. 390]

Robertson advised Dr. Edwards that she was depressed, anxious, and tearful every day and had no idea how it began. *Id.* She reported decreased energy, concentration and appetite. Robertson further advised Edwards that she "live[d] for nothing" and reported having been in the "psychiatric hospital" at Good Samaritan in August 2016. [Tr. 388]

Dr. Edwards assigned Robertson a Global Assessment of Functioning score of 60 to 65 and indicated that she was able to perform simple work-related tasks.[1] [Tr. 391–92] He believed that she could work without special supervision, but could benefit from a period of supervised training. [Tr. 392] She demonstrated an ability to adapt to changes in a day-to-day work setting without significant impairment. Edwards opined that Robertson was able to work eight hours a day, five days a week, without significant psychiatric symptoms, and could improve with counseling and medication. [Tr. 392]

---

[1] The Global Assessment of Functioning ("GAF") score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006). A GAF score of 60 indicates moderate symptoms, while a score of 65 suggests mild symptoms. *See Asberry v. Astrue*, No. 07–443, 2008 WL 5068546, at *7 (E.D. Ky. Nov. 25, 2008).

Robertson sought treatment for depression and anxiety at the Mountain Comprehensive Care Center ("MCCC") in early 2014. [Tr. 395] She reported sleep disturbances, irritability, suicidal thoughts, flashbacks, and bulimia in addition to symptoms of depression and anxiety. [Tr. 395] Robertson also stated that she had been cutting herself for two years. [Tr. 396] The counselor who performed Robertson's initial assessment found that her memory, insight, and judgment were intact. [Tr. 400] However, Robertson admitted to suicidal ideations and exhibited only fair eye contact. [Tr. 399–400] The counselor assigned Robertson a GAF score of 45. [Tr. 400]

Robertson returned to MCCC for a psychiatric evaluation on March 14, 2014. [Tr. 408] James Dumas, M.D., observed that Robertson's behavior was agitated and resistant, but that she had no thought abnormalities. [Tr. 409] Dr. Dumas believed that Robertson was depressed and that her judgment and insight were impaired, but that she was not at risk for suicide. *Id.* He diagnosed the claimant with bulimia and major depression and assigned a GAF score of 60. [Tr. 411–12] Dr. Dumas noted that Robertson refused medication but stated she would consider it in the future. [Tr. 412] Robertson followed-up with a counseling session at MCCC one week after Dr. Dumas's evaluation. [Tr. 414–15] It does not appear that Robertson returned to MCCC following that visit.

Robertson saw nurse practitioner Lola Arnett in June 2014 for the purpose of establishing a primary care provider. [Tr. 403] Ms. Arnett's treatment note from the initial visit indicates that an examination was performed, with unremarkable results. *Id.* Ms. Arnett diagnosed Robertson with "anxiety state, unspecified," asthma, and abdominal pain. She prescribed Paxil and asthma medications. [Tr. 403–04] Robertson saw Ms. Arnett again on July 7, 2014. [Tr. 417] Ms. Arnett reported that Robertson had no new complaints and was

- 5 -

feeling much better, with "adequate symptom control on current meds." [Tr. 417] She recommended that Robertson follow–up with her in three months. [Tr. 418]

On September 23, 2014, Dr. Scott Arnett, a physician working in the same clinic as Ms. Arnett, submitted an assessment of Robertson's ability to perform work-related activities. [Tr. 426] Dr. Arnett stated that Robertson had a fair ability to follow work rules, use judgment, interact with supervisors, function independently, maintain attention and concentration, understand detailed or simple instructions, and maintain her personal appearance. [Tr. 426–27] He indicated that she had poor or no ability to relate to co-workers, deal with the public, deal with work stress, understand complex instructions, behave in an emotionally stable manner, relate predictably, and demonstrate reliability. *Id.* Dr. Arnett commented that Robertson suffers from significant anxiety disorder with frequent mood swings, and a fear of crowds, strangers, and unfamiliar environments. [Tr. 426] Dr. Arnett further opined that Robertson had poor coping mechanisms with frequent lapses in concentration, causing great limitations in memory and thought organization. [Tr. 426–27]

The ALJ determined following the administrative hearing that Robertson had the following severe impairments: major depressive disorder, adjustment disorder with depressed and anxious mood, and personality disorder. [Tr. 33] She also found that Robertson did not have an impairment or combination of impairments that met or medically equaled a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 34] After considering the record, the ALJ determined that Robertson had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> She can understand, remember, and carry out one to two-step tasks over an eight-hour day, five days per week, forty hours per week. She can tolerate changes in a typical workday. She cannot work at a fixed production rate pace,

>     but she can do goal-oriented work.  She can make simple decisions and
>     judgments.  She can occasionally interact with supervisors and coworkers.  She
>     can never interact with the public.  She should avoid concentrated exposure to
>     fumes, odors, dust, gases, poor ventilation, and temperature extremes.

[Tr. 35]

The ALJ determined, based on this RFC, that Robertson was capable of performing her past relevant work as a cashier. [Tr. 38] Additionally, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that Robertson could perform. [Tr. 39–40] Accordingly, the ALJ determined that she had not been under a disability from the alleged onset date through the date of the ALJ's decision. [Tr. 40]

### III.   Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged

in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform his past work. If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

The Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV. Analysis

#### A. Dr. Scott Arnett's Opinion

The claimant argues that the ALJ erred by failing to discuss and give weight to Dr. Scott Arnett's September 23, 2014, opinion. [Tr. 426] At the time of the adjudication of the claimant's applications, 20 C.F.R. § 405.331 required that any written evidence be submitted no later than five business days prior to the scheduled hearing. If a claimant missed the deadline and still wished to submit additional evidence after the hearing but before the ALJ issued a decision, the claimant was required to show that there was a "reasonable possibility that the evidence, alone or when considered with other evidence of record, would affect the outcome of [her] claim" and the that SSA's action misled the claimant or claimant otherwise had good cause for failing to submit the evidence earlier. *See* 20 C.F.R. § 405.331(a) and (c).

It appears that Dr. Arnett's opinion was submitted the same day it was prepared—well after the hearing, which took place on August 20, 2014. There is no indication that the claimant attempted to satisfy the requirements of § 405.331(c) as described above. Further, there is no suggestion that the claimant made the ALJ aware that she wished to submit additional records or requested that the record be held open beyond the hearing date. *See Bass*, 499 F.3d at 513 (no good cause could be shown when the claimant's attorney did not request additional time to submit new evidence). Accordingly, the ALJ was not required to consider Dr. Arnett's opinion.

Alternatively, any failure to consider Arnett's opinion was harmless error. While the ALJ generally is not permitted to ignore medical opinions that contradict the ALJ's RFC finding, *see* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996), Arnett's opinion is so patently deficient, the Commissioner could not possibly rely on it. *See Wilson v. Comm'r of Soc. Sec.*,

378 F.3d 541, 547 (6th Cir. 2004). While the claimant was seen on two occasions by Lola Arnett, who worked in Dr. Arnett's practice, there is no indication that Dr. Arnett ever examined or treated the claimant. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (discussing treating physician rule).

It is well-established that an ALJ is not required to discuss every piece of evidence in the record. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). The claimant does not contend that Dr. Arnett examined her but, rather, that Dr. Arnett "completed a medical assessment" on September 23, 2014. [Record No. 10–1, p. 5] The assessment is devoid of medical findings or objective observations and includes only conclusions regarding the claimant's functional limitations. Assuming *arguendo* that Dr. Arnett relied on Lola Arnett's treatment notes in forming his opinion, his conclusions are inconsistent with Ms. Arnett's notes. Although Ms. Arnett diagnosed Robertson with anxiety, she reported on July 7, 2014 that Robertson had achieved adequate symptom control with medications. [Tr. 417] There is simply no indication that Dr. Arnett based the limitations he assessed on any type of objective evidence or treatment history. *See, e.g., Hyde v. Barnhart*, 375 F.Supp.2d 568, 575 (E.D. Mich. 2005). Remanding the matter for consideration of such an opinion is not warranted. *See Wilson*, 378 F.3d at 547 (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 766 n.6 (1969)) ("Where 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'").

### B. Failure to Consider Bulimia a Severe Impairment

The claimant also contends that the ALJ erred by failing to consider bulimia at step two of the sequential evaluation. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). [Record No. 10–1, p. 8] Establishing a severe impairment at step two is a *de minimis* hurdle and is intended to

screen out totally meritless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998). An impairment is not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

While the ALJ did not discuss bulimia at step 2, she did find that Robertson had severe impairments at that step. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (upon the finding of at least one severe impairment, the ALJ must go on to consider limitations imposed by all impairments). Accordingly, the failure to characterize bulimia as a severe impairment is of little consequence. Rather, the relevant inquiry is whether *all* impairments were considered in determining the claimant's RFC. *Id.* (stating that error at step two is reversible only if the ALJ fails to consider the claimant's impairments in the remaining steps of the disability determination).

The ALJ discussed Robertson's claims of bulimia, and noted that Dr. Dumas had diagnosed her with the disorder during a one-time evaluation. The ALJ noted, however, that Dumas assigned Robertson a GAF score of 60, which indicates moderate difficulty in social and occupational functioning. [Tr. 37] The ALJ also observed that the claimant had always been found upon examination to be well nourished. *Id.* Further, the claimant received mental health treatment for only three months before stopping treatment and establishing care with Lola Arnett. *Id.* She reported feeling much better at that time with the prescribed medication. It is also worth noting that, despite her claims that she had been bulimic for nearly 30 years, the claimant had never received treatment for the alleged condition. Further, during the administrative hearing, the claimant did not report any effects that bulimia had on her ability to work. Rather, she claimed that she was too anxious to work and that she just could not do it.

The claimant also has not shown that the RFC fails to account for any impairments associated with bulimia. Based on the foregoing, the ALJ's failure to consider bulimia at step two does not constitute reversible error.

### C.     Severe Mental Impairments at Step Three

Having determined that Robertson had severe mental impairments, the ALJ was required at step three to apply a "special technique" for evaluating the severity of those impairments. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652–53 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520a). *See also* 20 C.F.R. § 416.920a. The severity is assessed in terms of a prescribed list of functional restrictions commonly associated with mental disorders (i.e, "the B criteria").

The B criteria identify four areas that are considered essential to the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C. They are: activities of daily living; social functioning; concentration, persistence, and pace; and deterioration or decompensation in work or work-like settings. *Id.* The ALJ considered each of these areas and concluded that Robertson's activities of daily living and social functioning were mildly impaired; that she had moderate deficiencies of concentration, persistence, or pace; and that she never experienced deterioration or decompensation in a work-like setting. [Tr. 35]

The claimant argues that the ALJ's decision should be reversed because her finding regarding decompensation is not supported by substantial evidence. [Record No. 10–1, p. 9] "Deterioration or decompensation in a work-like setting" is defined as:

> [the] repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs and symptoms . . . with an accompanying difficulty in maintaining social relationships, and/or maintaining concentration, persistence, or pace. . . .

> Stresses common to the work environment include decisions, attendance, schedules, completing tasks, interactions with supervisors, . . . peers, etc.

*Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991) (quoting 20 C.F.R. pt 404, subpt. P, appendix 1, § 12.00(C)). Robertson relies on the fact that the ALJ gave great weight to the opinions of state agency consultants who, without explanation, reported that Robertson had experienced one to two episodes of decompensation. [Tr. 38, 89, 97, 114] Each of these consultants relied on the opinion of examining source Wayne Edwards, M.D., who did not comment expressly on decompensation. [Tr. 392]

The ALJ's written decision might have addressed this issue more directly, but the failure to do so does not constitute reversible error. First, the ALJ noted that the agency consultants did not have the opportunity to review the evidence submitted up to the time of the administrative hearing, or to evaluate the claimant's credibility. [Tr. 37] And aside from generalized arguments regarding suicidal thoughts, the claimant points only to her Tylenol overdose as evidence of an episode of decompensation. [Record No. 10–1, p. 9] The ALJ discussed this event, noting that the claimant vehemently denied attempting suicide and that she was released from the hospital without restrictions. [Tr. 36] Further, the RFC takes into consideration that the claimant cannot work at a fixed production rate, that she can only occasionally interact with supervisors and co-workers, and that she can never interact with the public. [Tr. 35] The claimant has not identified any portion of the record, other than the claimant's subjective complaints, that supports greater limitations than those included in the RFC.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

2. Plaintiff Lynne Anne Robertson's Motion for Summary Judgment [Record No. 10] is **DENIED.**

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 5th day of April, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge